UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | )<br>)<br>) |
| Plaintiff, | )  Civil Action No. 15-cv-00479<br>) |
| v. | )<br>) |
| AMIT KANODIA and IFTIKAR AHMED, | )  **COMPLAINT**<br>)<br>) |
| Defendants, and | )  JURY TRIAL DEMANDED<br>) |
| RAKITFI HOLDINGS, LLC, a Virginia Limited Liability Company, and LINCOLN CHARITABLE FOUNDATION, a supposed charity, | )<br>)<br>)<br>)<br>) |
| Relief Defendants. | )<br>) |

Plaintiff, United States Securities and Exchange Commission (the "Commission"), for its Complaint against Defendants Amit Kanodia ("Kanodia") and Iftikar Ahmed ("Ahmed") (collectively "Defendants") and Relief Defendants Rakitfi Holdings, LLC ("Rakitfi") and Lincoln Charitable Foundation ("Lincoln"), alleges as follows:

**SUMMARY**

1. This case involves insider trading by Defendants Kanodia and Ahmed in the securities of Cooper Tire and Rubber Company ("Cooper Tire"), prior to the June 12, 2013 announcement that Cooper Tire would be acquired by Apollo Tyres Ltd ("Apollo"), an Indian company. Kanodia obtained inside information about Apollo's potential acquisition of Cooper Tire from his wife, the then-general counsel of Apollo. Kanodia misappropriated this highly confidential information by tipping his close friend Ahmed and another longtime friend, "Tippee

1." Ahmed and Tippee 1 then traded on this inside information to make significant illicit profits. In exchange for these tips, Ahmed and Tippee 1 later paid Kanodia handsome kickbacks.

2. In or about late 2012, Apollo took efforts to acquire Cooper Tire. Apollo made several offers to buy all of Cooper Tire common stock, but Cooper Tire rejected these early offers. By at least April 2013, however, Apollo and Cooper Tire had entered into serious acquisition negotiations. On or about April 4, 2013, Apollo delivered a proposal to Cooper Tire to purchase all its common stock for $35 per share. This was significantly above the price at which Cooper Tire's stock was trading; on April 4, 2013, Cooper Tire's stock price closed at $24.53 per share. On or about April 9, 2013, Cooper Tire informed Apollo that it could begin due diligence on the company.

3. By no later than the time that these April 2013 negotiations began, Kanodia had learned of the potential acquisition from his wife, who was intimately involved in the acquisition on behalf of her employer, Apollo. Kanodia tipped Ahmed, who then began to purchase significant amounts of Cooper Tire securities. Between approximately April 10 and June 6, 2013, Ahmed purchased approximately $2.5 million worth of Cooper Tire stock and options. Kanodia also tipped Tippee 1, whose purchases of Cooper Tire securities followed a similar pattern to Ahmed's purchases.

4. On or about June 12, 2013, Apollo and Cooper Tire announced that Apollo would acquire Cooper Tire at a price of $35 per share. Following the announcement, Cooper Tire's stock price closed at $34.66 per share, up 41% from its June 11 closing price of $24.56. After the companies announced the acquisition, Ahmed immediately liquidated his Cooper Tire holdings, generating more than $1.1 million in ill-gotten profits. Approximately two months later, Ahmed transferred $220,000 to Kanodia. Similarly, Tippee 1 liquidated his Cooper Tire

holdings after the acquisition announcement. Tippee 1 realized almost $170,000 in ill-gotten profits, and also paid a portion of his profits to Kanodia. Both Ahmed's and Tippee 1's kickbacks were directed to the same bank account, which was held in the name of Lincoln, a supposed charity that Kanodia controlled.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

5.     The Commission brings this action pursuant to the authority conferred upon it by Section 21(d) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. 78u(d)]. By knowingly and recklessly engaging in the conduct described in this Complaint, Defendants violated and, unless restrained and enjoined by this Court, will again violate Section 10(b) of the Exchange Act and Rule 10b-5 thereunder. The Commission therefore seeks permanent injunctions against Defendants, enjoining them from engaging in the transactions, acts, practices, and courses of business alleged in this Complaint, disgorgement of all ill-gotten gains from the unlawful insider trading activity set forth in this Complaint, together with prejudgment interest, and civil penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. 78u-1]. The Commission further seeks a final judgment ordering Relief Defendants Lincoln and Rakitfi to disgorge the ill-gotten gains held in their accounts or otherwise received by them, and to pay prejudgment interest thereon. The Commission also seeks any other relief that the Court may deem appropriate pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. 78u(d)(5)].

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this action pursuant to Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. 78u(d), 78u(e) and 78aa]. The Defendants have, directly or indirectly, made use of the means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange in connection with the acts, practices,

transactions, and courses of business alleged in this Complaint. During the time of the conduct at issue, shares of Cooper Tire were traded on the New York Stock Exchange ("NYSE").

7.  Venue is proper in this Court pursuant to Section 21(d), 21A and 27 of the Exchange Act [15 U.S.C. 78u(d), 78u-1 and 78aa]. Certain of the acts, practices and transactions and courses of business constituting violations alleged in this Complaint occurred within the jurisdiction of the United States District Court for the District of Connecticut and elsewhere within the United States. Further, defendant Ahmed resides in Connecticut.

## DEFENDANTS

8.  **Kanodia**, 47, currently resides in Brookline, Massachusetts. He is an entrepreneur and private equity investor and claims to be a trustee of Lincoln, a supposed charity. Kanodia received his Bachelor's and MBA degrees from University of Massachusetts Lowell. During the relevant time period, Kanodia was married to the general counsel of Apollo. As more fully outlined herein, Kanodia obtained inside information from his wife and illegally tipped that information to Ahmed and Tippee 1.

9.  **Ahmed**, 43, currently resides in Greenwich, Connecticut. He is a general partner at a multistage venture capital firm. Before joining the venture capital firm in 2003, Ahmed worked as an investment professional at other financial industry companies. He graduated with a degree in engineering from the Indian Institute of Technology, New Delhi and earned his MBA from Harvard Business School. As more fully outlined herein, Ahmed traded ahead of the Apollo-Cooper Tire acquisition announcement while in possession of inside information he obtained from Kanodia and reaped more than $1.1 million in illicit profits on those trades.

**RELIEF DEFENDANTS**

10. **Rakitfi** (Ahmed's first name spelled backwards) is a Virginia Limited Liability Company owned entirely by Ahmed. In approximately 2010, Rakitfi established a brokerage account with Fidelity Management and Research LLC ("Fidelity"). Shortly after Ahmed opened Rakitfi's Fidelity account, he submitted an options application for the account and listed his "friend" Kanodia as an authorized agent. As more fully outlined herein, Ahmed used Rakitfi's Fidelity account to effectuate and hold profits from insider trades.

11. **Lincoln** is a supposed charity operated by Kanodia. During 2013, Lincoln held a bank account at a New York branch of Bank of America. As more fully outlined herein, Ahmed and Tippee 1 compensated Kanodia for his insider trading tips by paying money to Lincoln's Bank of America account.

**OTHER RELEVANT ENTITIES**

12. **Cooper Tire** is an American Company that manufactures and markets replacement tires worldwide. Cooper Tire was founded in 1913 and is headquartered in Findlay, Ohio. Its common stock is listed on the NYSE under the symbol "CTB."

13. **Apollo** is an Indian company that manufactures tires. Apollo was founded in 1976 and is headquartered in India. Its common stock is listed on the National Stock Exchange of India ("NSE") under the symbol "APOLLOTYRE."

**FACTS**

**Apollo Makes an Offer to Acquire Cooper Tire**

14. In or about August 2012, Apollo proposed to purchase all Cooper Tire common stock for $22.75 per share. Cooper Tire rejected the offer.

15. Between September 2012 and April 2013, Apollo made additional offers to acquire Cooper Tire, each time raising its proposed purchase price. Cooper Tire did not accept these offers.

16. On or about April 4, 2013, Apollo submitted another offer to purchase all Cooper Tire common stock for $35 per share. Cooper Tire did not reject the offer. Instead, on or about April 9, 2013, Cooper Tire discussed potential next steps with Apollo and agreed to allow Apollo to begin detailed due diligence on Cooper Tire. On or about April 16, 2013, Cooper Tire opened a virtual data room for Apollo and its advisors to begin performing due diligence on Cooper Tire.

17. In the weeks that followed, negotiations between Cooper Tire and Apollo progressed, resulting in a June 12, 2013 announcement that Apollo would acquire Cooper Tire at a price of $35 per share. On the date of the announcement, Cooper Tire's stock price closed at $34.66, up 41% from its June 11, 2013 closing price of $24.56. While the Apollo-Cooper Tire acquisition was publicly announced, it was not ultimately completed.

## Kanodia is a Longtime Friend of Both Ahmed and Tippee 1

18. Kanodia and Ahmed are longtime friends and have numerous common connections. Both were born in India and now reside in the United States. Both attended business schools in or around the Greater Boston area. Ahmed attended and spoke at Kanodia's wedding. During the time period relevant to this Complaint, Ahmed and Kanodia spoke to each other by telephone on a regular basis.

19. Similarly, Kanodia and Tippee 1 are longtime friends, and had known each other for several years at the time of the events described in this Complaint. Both live in the Greater Boston area. During the time period relevant to this Complaint, Kanodia and Tippee 1 spoke to each other by telephone on a regular basis. They also frequently met in person.

6

**Kanodia Tipped Ahmed and Tippee 1 With Material, Nonpublic Information**

20. During the time period relevant to this Complaint, Kanodia was married to the general counsel of Apollo. Kanodia's wife was intimately involved in Apollo's efforts to acquire Cooper Tire and obtain financing for the deal. At certain times during the period of Apollo's negotiations to acquire Cooper Tire, Kanodia and his wife resided at a hotel in New York, New York. Kanodia obtained material, nonpublic information about Apollo's acquisition of Cooper Tire from his wife.

21. Rather than keep this information confidential, Kanodia breached the duty of trust and confidence that he owed his wife by relaying this material, nonpublic information to Ahmed and Tippee 1 in exchange for kickbacks. More specifically, from in or about April 2013 to in or about June 2013, Kanodia repeatedly tipped Ahmed and Tippee 1 about the status of Apollo's impending acquisition of Cooper Tire.

**Ahmed Purchased Cooper Tire Securities Based on Material, Nonpublic Information**

22. As detailed below, from April 10 through June 6, 2013, Ahmed purchased Cooper Tire equities and Cooper Tire options in three brokerage accounts: (i) a Fidelity brokerage account registered to Rakitfi; (ii) a Fidelity account registered to Ahmed and his wife; and (iii) an E-Trade account registered to Ahmed. Following the announcement of Cooper Tire's acquisition, Ahmed sold all of his Cooper Tire holdings on June 12 and 13, 2013, for a total profit of more than $1.1 million.

23. On or about April 9, 2013, at approximately 5:26 p.m., Kanodia telephoned Ahmed and spoke with him for over three minutes. The following day, at approximately 9:36 a.m., 2,000 shares of Cooper Tire stock were purchased in the Rakitfi Fidelity brokerage

account, at a cost of nearly $50,000. The purchase occurred one day after Cooper Tire formally communicated to Apollo that it could begin detailed due diligence on Cooper Tire.

24. On or about May 1, 2013, the legal teams for Cooper Tire and Apollo telephonically discussed the draft merger agreement and the draft financing documents. On or about May 3 and May 5, 2013, the financial advisors for Cooper Tire and Apollo had meetings to discuss the proposed merger and the related financing. On or about May 6, 2013, at approximately 8:54 a.m., a call lasting over three minutes was placed from a telephone number registered to Ahmed's employer to Kanodia. Approximately 35 minutes later, at 9:31 a.m., 43,000 shares of Cooper Tire stock were purchased in the Rakitfi Fidelity brokerage account, at a cost of nearly $1.1 million. Approximately four minutes later, 200 Cooper Tire call options with a strike price of $25 and an expiration date of June 22, 2013 were purchased in the Rakitfi Fidelity brokerage account.[1]

25. On or about May 6, 2013, several telephone calls and text messages were exchanged between a number registered to Ahmed's employer and Kanodia during the afternoon and early evening. At 7:53 p.m., a telephone call lasting almost four minutes was placed from a number registered to Ahmed's employer to Kanodia. The following morning, at approximately 10:05 a.m., Ahmed purchased 40,000 shares of Cooper Tire stock at a cost of more than $1 million in the Fidelity brokerage account registered to Ahmed and his wife.

26. On or about May 22, 2013, at approximately 10:43 a.m., a telephone call lasting approximately six minutes was placed from a number registered to Ahmed's employer to

---

[1] Equity call options give the buyer the right, but not the obligation, to purchase a company's stock at a set price (the "strike" price) for a certain period of time (through "expiration"). In general, the buyer of a call option stands to gain if the price of the stock increases prior to expiration.

Kanodia.  Less than 90 minutes later, at approximately 12:05 p.m., Ahmed purchased 2,000 shares of Cooper Tire stock for more than $50,000 in his E-Trade brokerage account.

       27.      On or about May 31, June 1, and June 3, 2013, Cooper Tire's and Apollo's legal counsels exchanged drafts of documents concerning the financing of Apollo's proposed acquisition of Cooper Tire.  On or about June 3, 2013, at approximately 3:57 p.m., 400 Cooper Tire call options with a strike price of $30 and an expiration date of June 22, 2013 were purchased in the Rakitfi Fidelity brokerage account.  These option contracts, which were set to expire in less than three weeks, were significantly "out-of-the-money," as Cooper Tire's stock price ranged from approximately $24.66-$26.06 per share on the day of Ahmed's purchase.[2]

       28.      On or about June 4, 2013, at approximately 9:30 a.m., Ahmed purchased 10,000 shares of Cooper Tire stock at a cost of more than $250,000 in the Fidelity brokerage account registered to Ahmed and his wife.  On or about June 5, 2013, at approximately 5:47 p.m., a telephone call lasting over three minutes was placed from a number registered to Ahmed's employer to Kanodia.  The following morning, at approximately 9:57 a.m., an additional 35 Cooper Tire call options at a strike price of $30 and an expiration date of June 22, 2013 were purchased in the Rakitfi Fidelity brokerage account.  These option contracts were set to expire in 17 days and were again significantly out-of-the-money.

       29.      As a result of these purchases, by early June 2013, Ahmed had amassed approximately $2.5 million worth of Cooper Tire securities.

       30.      On or about June 12, 2013, the companies announced that Cooper Tire would be acquired by Apollo at a price of $35 per share.  On June 12, Cooper Tire's stock price closed at $34.66 per share, up 41% from its June 11 closing price of $24.56.  Following the June 12

---

[2] An option contract is "out-of-the-money" if its strike price is higher than the market price of the stock. If an option contract is still out-of-the-money at the expiration date, the contract expires worthless.

announcement, Ahmed liquidated his Cooper Tire holdings, reaping more than $1.1 million in profits.

31. On or about August 9, 2013, Ahmed provided a kickback to Kanodia by transferring $220,000 to a bank account held in the name of Lincoln, a supposed charitable organization controlled by Kanodia. The Lincoln bank account was used to conceal Kanodia's receipt of money in exchange for providing Ahmed with material, nonpublic information.

### Tippee 1 Made Similar Purchases Based on Material, Nonpublic Information

32. Tippee 1 also made purchases of Cooper Tire equities and options based on tips he received from Kanodia regarding Apollo's planned acquisition of Cooper Tire. From April 6 through June 11, 2013, Tippee 1 purchased a significant amount of Cooper Tire equities and options in two E-Trade brokerage accounts. Like Ahmed, Tippee 1 then sold all of his Cooper Tire holdings following the acquisition announcement, and paid Kanodia a kickback.

33. On approximately six occasions between April 6 and May 10, 2013, Tippee 1 purchased shares of Cooper Tire stock. In total, Tippee 1 purchased 15,000 shares at a cost of approximately $370,000. During the time period of these purchases, Tippee 1 was in frequent contact with Kanodia.

34. Tippee 1 also purchased Cooper Tire call options contracts in the days immediately preceding the Cooper Tire acquisition announcement. On approximately four occasions between June 7 and June 11, 2013, Tippee 1 purchased a total of 90 Cooper Tire call option contracts, all of which had a strike price of $30. At the time of the purchases, these option contracts were significantly out-of-the-money, as Cooper Tire's stock price was hovering around $25 per share. As with the stock purchases, during the time period of these call option purchases, Tippee 1 was in frequent contact with Kanodia.

35.     Tippee 1 used a significant amount of his brokerage account assets to finance his purchases of Cooper Tire equities and options. Tippee 1 used almost all of the cash in one of his brokerage accounts, and liquidated the majority of the stock he held in another account, using the proceeds to purchase Cooper Tire stock.

36.     In the months following the June 12 acquisition announcement, Tippee 1 sold all of his Cooper Tire stock and call options, realizing a total profit of nearly $170,000.

37.     On or about December 30, 2013, Tippee 1 provided a kickback to Kanodia by paying $22,500 to the same Lincoln bank account used to receive Ahmed's kickback payment.

**Relief Defendants Rakitfi and Lincoln Received Illicit Trading Profits**

38.     Rakitfi and Lincoln both received illicit profits from the Defendants' insider trading. Specifically, as detailed above, the Fidelity brokerage account registered to Rakitfi held significant proceeds from Ahmed's trades in Cooper Tire equities and options. Further, Ahmed's and Tippee 1's kickback payments were directed to Lincoln's bank account. Neither Rakitfi nor Lincoln has a legitimate claim to these funds.

**FIRST CLAIM FOR RELIEF**

**Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder**
**(Against All Defendants)**

39.     The Commission realleges and incorporates by reference paragraphs 1 through 38, as though fully set forth herein.

40.     The information about the potential Apollo-Cooper Tire acquisition, which Kanodia obtained from his wife and provided to Ahmed and Tippee 1, was both material and nonpublic.

41.     Kanodia knew, recklessly disregarded, or should have known that the information was material and nonpublic.

42. Kanodia misappropriated the information about the Apollo-Cooper Tire acquisition from his wife, to whom he owed a duty of trust and confidence, by tipping the information to his close friends Ahmed and Tippee 1. In exchange for these tips, Kanodia was paid kickbacks.

43. Ahmed knew, recklessly disregarded, or should have known that the information Kanodia tipped to him was material and nonpublic.

44. Ahmed knew, recklessly disregarded, or should have known that Kanodia owed a duty, or obligation arising from a similar relationship of trust and confidence, to keep the information confidential.

45. Ahmed knew, recklessly disregarded, or should have known that the information he received from Kanodia was disclosed or misappropriated in breach of a duty or obligation arising from a similar relationship of trust and confidence.

46. Nevertheless, Ahmed traded Cooper Tire securities on the basis of the material nonpublic information that he received from Kanodia.

47. At all times, both Kanodia and Ahmed acted with the requisite scienter.

48. By virtue of the foregoing, Defendants Kanodia and Ahmed, in connection with the purchase or sale of securities, by the use of the means or instrumentalities of interstate commerce, or of the mails, or a facility of a national securities exchange, directly or indirectly:

   a) employed devices, schemes, or artifices to defraud;
   b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

      c) engaged in acts, practices, or courses of business which operated or would have operated as a fraud or deceit upon persons.

49. By virtue of the foregoing, defendants Kanodia and Ahmed, directly or indirectly, violated, and unless enjoined, will again violate Section 10(b) of the Exchange Act [15 U.S.C. 78j(b)] and Rule 10b-5 [17 C.F.R. 240.10b-5] thereunder.

### SECOND CLAIM FOR RELIEF
**Equitable Disgorgement**
**(Against Relief Defendant Rakitfi Holdings, LLC)**

50. The Commission realleges and incorporates by reference paragraphs 1 through 38, as though fully set forth herein.

51. Ahmed is the sole member of Rakitfi.

52. Rakitfi received and held proceeds of the unlawful trades that Kanodia and Ahmed caused to be executed in Rakitfi's Fidelity account.

53. Rakitfi has no legitimate claim to these ill-gotten gains.

54. Rakitfi obtained the funds under circumstances in which it is not just, equitable, or conscionable for it to retain the funds.  Rakitfi has therefore been unjustly enriched.

### THIRD CLAIM FOR RELIEF
**Equitable Disgorgement**
**(Against Relief Defendant Lincoln Charitable Foundation)**

55. The Commission realleges and incorporates by reference paragraphs 1 through 38, as though fully set forth herein.

56. Kanodia claims to be the trustee for Lincoln.

57. Kanodia controls Lincoln's bank account.

58. Lincoln's bank account received and held proceeds of the unlawful trades that Kanodia caused Ahmed to execute.

59. Lincoln has no legitimate claim to these ill-gotten gains.

60. Lincoln obtained the funds under circumstances in which it is not just, equitable, or conscionable for it to retain the funds.  Lincoln has therefore been unjustly enriched.

## **RELIEF SOUGHT**

**WHEREFORE**, the Commission respectfully requests that this Court enter a Final Judgment:

### I.

Finding that each of the Defendants committed the violations alleged in this Complaint;

### II.

Permanently restraining and enjoining the Defendants and their agents, servants, employees, attorneys, and accountants, and those persons in active concert or participation with any of them, who receive actual notice of the Final Judgment by personal service or otherwise, and each of them, from engaging in transactions, acts, practices, and courses of business described herein, and from engaging in conduct of similar purport and object in violation of Section 10(b) of the Exchange Act [ 15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder;

### III.

Directing the Defendants and the Relief Defendants to disgorge all ill-gotten gains received during the period of violative conduct and pay prejudgment interest on such ill-gotten gains;

### IV.

Directing the Defendants, and each of them, to pay civil money penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1]; and

**V.**

Granting such other and further relief as this Court may deem just and proper.

### **JURY DEMAND**

The Commission demands a jury in this matter.

Dated: April 2, 2015

                                              Respectfully submitted,

                                              s/ John B. Hughes
                                              John B. Hughes (CT05289)
                                              Connecticut Federal Bar No. ct05289
                                              Assistant United States Attorney
                                              Chief, Civil Division
                                              United States Attorney's Office
                                              Connecticut Financial Center
                                              157 Church St., 25th Floor
                                              New Haven, CT 06510
                                              Ph:    (203) 821-3700
                                              Fax:   (203) 773-5373
                                              E-mail: John.Hughes@usdoj.gov

                                              s/ Nicholas P. Heinke
                                              Nicholas P. Heinke (Colo. Bar No. 38738)
                                              Connecticut Bar No. phv07374
                                              Mark L. Williams (New York Bar. No. 4796611)
                                              Connecticut Bar No. phv07375
                                              United States Securities and Exchange Commission
                                              1961 Stout St., Suite 1700, Denver, CO  80294
                                              Phone:      (303) 844-1000
                                                                        (303) 844-1071 (Heinke)
                                                                        (303) 844-1027 (Williams)
                                              E-mail:      HeinkeN@sec.gov
                                                                        WilliamsML@sec.gov

                                              *Attorneys for Plaintiff*
                                              UNITED STATES SECURITIES AND
                                              EXCHANGE COMMISSION