UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

———————————————————
UNITED STATES SECURITIES                     )
AND EXCHANGE COMMISSION,            )
                                                              )
              v.                                              )
                                                              )        Civil Action No. 15-cv-13042-ADB
AMIT KANODIA, and                              )
IFTIKAR AHMED,                                   )
                                                              )
              Defendants, and                         )
                                                              )
RAKITFI HOLDINGS, LLC, and             )
LINCOLN CHARITABLE                       )
FOUNDATION,                                       )        **ORAL ARGUMENT REQUESTED**
                                                              )
              Relief Defendants.                      )
———————————————————)

**DEFENDANT AMIT KANODIA'S MEMORANDUM OF LAW
IN OPPOSITION TO THE UNITED STATES (DEPARTMENT OF JUSTICE)
MOTION FOR LEAVE TO INTERVENE AND FOR A STAY OF FURTHER
DISCOVERY PENDING RESOLUTION OF PARALLEL CRIMINAL PROCEEDINGS**

        The government is attempting to tactically manipulate the judicial system by pursing "a

strategy that allows them to take advantage of the benefits of dual prosecutions, but then

complain when the defendants, too, find ways to benefit from the otherwise very burdensome

task of having to defend on two fronts at the same time." *S.E.C. v. O'Neill*, 98 F. Supp. 3d 219,

224 (D. Mass. 2015).  As it has in the past, the government argues civil discovery (1) would

undermine the Jencks Act and other criminal rules, particularly if the defendant obtains

information that could help him in the criminal case to which he is not entitled to as part of the

criminal proceeding; (2) that a stay would create efficiencies; and (3) that a stay would conserve

the parties' and the Court's resources.  *See* Govt. Memo at 2–5.  Each are arguments this Court

considered and found unpersuasive in *S.E.C v. O'Neill*, *supra*.  As such, defendant Amit Kanodia

respectfully requests this Court deny the government's request for a general or limited stay of discovery, but respectfully requests a stay of any deposition as to himself to "avoid facing the dilemma of either choosing to make statements that could be used against him in the criminal case, or suffering an adverse inference if he refuses to answer questions at a deposition." *Id.* at 223.

## I.  Background and Facts

As set forth in the Securities and Exchange ("SEC") Complaint, the government and the SEC allege that Mr. Kanodia obtained nonpublic confidential information about the Apollo-Cooper Tire acquisition from his then-wife and Apollo's general counsel.  The pleading further alleges that Mr. Kanodia violated a known duty of trust and confidence to his then-wife by disclosing confidential information to his friends, Iftikar Ahmed (co-defendant in this case and the criminal case) and Tippee 1 (the government's cooperating witness),[1] who placed trades based on the information and paid Mr. Kanodia a kickback in the form of a donation to his "supposed charity," Lincoln Charitable Foundation.  Mr. Kanodia strongly challenges these very serious accusations and intends to disprove these allegations through civil discovery and through trial.  As part of that process, Mr. Kanodia has been transparent about his intention to depose anticipated government witnesses to establish his defense.  Mr. Kanodia does not intend to depose anyone who could threaten an on-going government investigation or whose identity is unknown.

---

[1] The defendants obviously know the identity of Tippee 1, but nonetheless employ the pseudonym Tippee 1 herein.  After the defendants arrest the government publicly charged Tippee 1 with conspiracy to commit securities fraud and the SEC brought a parallel civil proceeding. *See* 1:15-cr-10210-NMG, Dkt. 1 (Information); *see also* 11:15-cv-13042-ADB, Dkt. 1 (SEC Complaint).  Thus, potential discovery directed at Tippee 1 will not threaten to compromise the government's investigation or the identity of Tippee 1.

In bringing the parallel litigation, the government worked hand-in-hand with the SEC. During the investigatory phase, according to a Federal Bureau of Investigation ("FBI") 302 report, agents for the FBI, the U.S. Attorney's Office, and the SEC were present during the questioning of Tippee 1.  The SEC filed the instant action on April 2, 2015, the same day the criminal complaint, filed on April 1, 2015, was unsealed.  *See U.S. v. Kanodia et al*, Docket No. 1:15-cr-10131, Dkt. 3.[2]  That same day both the SEC and the U.S. Attorney's Office issued press releases trumpeting the civil and criminal charges lodged against the defendants.  *See, e.g.*, U.S. Securities and Exchange Press Release, Dated April 2, 2015, http://www.sec.gov/news/pressrelease/2015-56.html ("SEC Press Release"); U.S. Attorney's Press Release, Dated April 2, 2015, http://www.justice.gov/usao-ma/pr/brookline-man-and-connecticut-fund-manager-arrested-million-dollar-insider-trading-scheme ("USAO Press Release").  Both press releases identify the defendants by name and address ("Amit Kanodia, 47, of Brookline, and Iftikar Ahmed, 44, of Greenwich, Conn.") and the charges against them (securities fraud).  *Id.*  Furthermore, the government essentially concedes that it worked hand-in-hand with the SEC in its statement. *See* USAO Press Release ("The U.S. Attorney's Office received valuable assistance from the Securities & Exchange Commission, which today filed a separate civil action in federal court."); *see also* SEC Press Release ("The SEC appreciates the assistance of the U.S. Attorney's Office in Boston, the U.S. Attorney's Office in Connecticut, the Federal Bureau of Investigations, and FINRA, the Financial Industry Regulatory Authority.").  Indeed, it is because of the hand-in-hand nature of the civil and criminal proceedings that Mr. Kanodia referenced this case and the SEC's initial disclosure in his requests for disclosure of exculpatory materials in the criminal case.  *See* 1:15-cr-10131, Dkt. 41.

---

[2] The Grand Jury subsequently returned an Indictment on May 28, 2015. *See U.S. v. Kanodia et al*, Docket No. 1:15-cr-10131, Dkt. 27.

## II.  Legal Standard

### a.  *General Legal Framework: The government's "heavy burden."*

As this Court explained in *SEC v. Glatfelter et al.*, quoting the First Circuit in *Microfinancial, Inc,*:

> The decision whether or not to stay civil litigation in deference to parallel criminal proceedings is discretionary. Accordingly, we review the denial of a motion to stay for abuse of discretion. *A movant must carry a heavy burden* to succeed in such an endeavor.

*S.E.C. v. Glatfelter, et al.*, 11-cv-11649-MLW, Dkt. 51 (Order dated April 29, 2014) at 3, *quoting Microfinancial, Inc., v. Premier Holidays Int'l*, 385 F.3d 72, 77 (1st Cir.2004) (emphasis added).  As the Court further observed, while the First Circuit identified each instance as "*sui generis*," the case law discloses numerous factors that typically bear on the decisional calculus:

> (i) the interests of the civil plaintiff in proceeding expeditiously with the civil litigation, including the avoidance of any prejudice to the plaintiff should a delay transpire, (ii) the hardship to the defendant, including the burden placed upon him should the cases go forward in tandem; (iii) the convenience of both the civil and criminal courts; (iv) the interests of third parties; and (v) the public interest. To this list we add (vi) the good faith of the litigants (or the absence of it) and (vii) the status of the cases.

*Id.*; *see also Austin v. Unarco Indus., Inc.*, 705 F.2d 1, 5 (1st Cir.1983) (explaining that the movant must demonstrate "a clear case of hardship" to be entitled to a discretionary stay); *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir.1995) ("In the absence of substantial prejudice to the rights of the parties involved, simultaneous parallel civil and criminal proceedings are unobjectionable under our jurisprudence.").

4

    b.   _The government has failed to sustain its "heavy burden."_

        i.   _The loss of the government's usual "tactical advantage" is legally insufficient to justify a stay of these proceedings, particularly where the government has worked hand-in-hand with the SEC in bringing the civil action._

Stripped to its core, the government principally argues that a stay is necessary so that the criminal prosecution is not burdened by more expansive civil discovery.  This tired argument has been rejected by this Court in _S.E.C v. O'Neill, supra,_ and has been rejected with regularity by other courts, particularly where, as here, the U.S. Attorney's Office has worked hand-in-hand with the SEC in bringing the parallel proceedings.  As the court observed in _S.E.C. v. Sandifur,_ 2006 WL 3692611 at *2 (W.D.Wash.2006):

> Although courts have been receptive to Government stay requests in civil cases brought by parties _other than the Government_, results in recent years have been markedly different when the Government itself brings a civil lawsuit simultaneous with a criminal proceeding.  **_Courts regularly deny stays when civil regulators have worked directly in concert with the criminal prosecutors during the investigation and the Government has used parallel proceedings to its advantage_**.

(Emphasis added), _citing S.E.C. v. Kornman_, 2006 WL 150954 (N.D.Tex. May 31, 2006); _SEC v. Saad_, 229 F.R.D. 90 (S.D.N.Y.2005); _and S.E.C. v. Yuen_, No. 03 Civ 4376, slip op. at 5, 11–13  (C.D.Cal. Oct. 2, 2003); _see also S.E.C. v. Oakford Corp._, 181 F.R.D. 269, 272–73 (S.D.N.Y.1998) ("[T]o the extent that the defendants' discovery requests simply result in the happenstance that in defending themselves against the serious civil charges that another government agency has chosen to file against them they obtain certain ordinary discovery that will also be helpful in the defense of their criminal case, there is no cognizable harm to the government in providing such discovery beyond its desire to maintain a tactical advantage").

In this case, as in *O'Neill*, "the government's investigation is complete and charges have been brought." *S.E.C. v. O'Neill*, 98 F. Supp. 3d at 222.  The identity of the confidential witness, Tippee 1, and the identity of a second witness, Mr. Kanodia's former spouse, Shahana Basu Kanodia, are publicly known and no pending investigation is threatened given the prosecution and plea of Tippee 1 and the *de facto* letter immunity conferred by the U.S. Attorney's Office on Ms. Basu. *See id*.  Thus, civil discovery may "reveal aspects of the government's criminal case or result in inconsistent statements if witnesses are questioned more than once, but" it "will not fundamentally compromise an ongoing investigation or prosecution." *Id.*  "Moreover, these are the risks that the government and the SEC run when they elect to pursue parallel investigations and prosecutions." *Id.*

In making its legally insufficient argument, the government relies on two cases that are easily distinguished from the present one.  *See* Govt. Memo at 3 (*citing* to *S.E.C. v. Wood*, *S.E.C. v. Telefree Inc.*, *and S.E.C v. Nicholas*).  In *S.E.C v. TelexFree Inc.*, there was no true opposition to the government's motion. *See* Case No. 14-cv-11858-NMG, Dkt. 275 at 3 (court noting that the SEC, Telexfree and the eight individual defendants did not oppose the government's motion; one promoter "filed a nominal opposition to the motion, [but] she also asks the Court to stay discovery with respect to her during the pendency of her motion to dismiss"); *see also id.* at 7 ("Finally, a number of the individual defendants have raised concerns about mounting litigation expenses. A stay in the civil enforcement proceeding will allow defendants to avoid substantial litigation costs while the criminal proceeding is pending. That appears to be precisely the same reason why defendants were virtually unanimous in their assent to the government's motion.") While in *S.E.C. v. Nicholas*, the court concluded that "the volume of discovery in the civil case is massive; its breadth and complexity is almost certain to cause delay in the criminal case."

*Nicholas*, 569 F. Supp. 2d at 1069.  *Nicholas* involved a "five-year systematic scheme to backdate stock options granted to virtually all Broadcom officers and employees." *Id.* at 1067 (internal citations omitted).  The court noted that the $2.2 billion charge against earnings was the largest restatement arising from stock option backdating in our country's history. *Id.* at 1072 (internal citations omitted).  Document production was expected to range "well into the millions of pages." *Id.* at 1069.  Finally, defendants faced sentences "perhaps for the remainder of their natural lives." *Id.* at 1072.  Unlike *TelexFree* and *Nicholas*, there is a real and substantial opposition to the government's motion and there is no risk that the civil matter will cause delay in the criminal case (defendant expects discovery to be in the range of one hundred thousand pages, not even close the millions of pages in *Nicholas*).

Lastly, the Government relies upon conclusory and legally insufficient assertions of prejudice.  The government speculates that civil discovery might undermine the Jencks Act and other criminal rules, and that a deposition "to which the government is not a party, provides a defendant an opportunity to manufacture artificial inconsistencies . . . ." *See* Govt. Memo at 2. These are the same conclusory arguments rejected by this Court in *S.E.C. v. O'Neill*, 98 F. Supp. 3d at 22 –22 and other courts, including *S.E.C. v. Fraser*, 2009 WL 1531854 (D.Ariz. June 1, 2009).  There, the government argued "that its criminal case against [the] [d]efendants [ ] [would] be undermined if the civil case proceeds because the 'deposition testimony and other information that the defendant[s] would be able to obtain through the civil discovery rules would essentially hand the defendant[s] a road map to the United States' case, allowing them to tailor their defense to what others say about them.'" *Fraser*, 2009 WL 1531854 at *2.  Rejecting the requested stay, the court noted that the government "offers only the conclusory allegation that the criminal case might be harmed simply because civil discovery rules are more broad than

criminal discovery rules.  Such a blanket assertion is not sufficient to establish the 'substantial prejudice,' Keating, 45 F.3d at 324, that is necessary to warrant granting a stay." *Fraser*, 2009 WL 1531854 at \*2, *citing United States v. All Funds On Deposit*, 767 F.Supp. 36, 42 (E.D.N.Y. 1991) ("[M]ere conclusory allegations of potential abuse or simply the opportunity by the claimant to improperly exploit civil discovery . . . will not avail on a motion for a stay.") (*quoting United States v. Leasehold Interests*, 754 F.Supp. 282, 287 (E.D.N.Y.1990)); *Lizarraga v. City of Nogales*, 2007 WL 215616, at \*3 (D.Ariz. Jan. 24, 2007) ("Conclusory allegations of potential abuse or simply the opportunity for the plaintiff to exploit civil discovery are generally unavailing to support a motion for stay"); *see also Sandifur,* 2006 WL 3692611 at \*3 ("In this case, the United States has failed to show any real prejudice that would result from the simultaneous progression of both civil discovery and the criminal case.  The Government offers nothing but the bare assertion that allowing depoitions of the relevant witnesses will 'significantly increase the potential for confusion and misunderstanding.' This Court can see no reason why the deponants would be confused.") (internal citations omitted).

Indeed, the government's complaint regarding the alleged unfair prejudice that flows from more expansive civil discovery rings particularly hollow here, given that the U.S. Attorney's Office, working hand-in-hand with the SEC, deliberately chose to bring the parallel proceedings. *See* USAO Press Release; SEC Press Release; *see also O'Neill*, 98 F. Supp. 3d at 222 ("Moreover, these are the risks that the government and the SEC run when they elect to pursue parallel investigations and prosecutions.")  As the Court in *Sandifur* rightfully noted, in rejecting the government argument that a stay was needed to avoid a loss of the government's tactical advantage in the criminal case, "[h]ad the Government thought this was a serious problem, it could have easily avoided it by waiting until after the criminal matter was resolved to

institute civil proceedings.  Instead, the United States worked directly with the SEC and

voluntarily chose to institute both civil and criminal actions at the same time.  As a result, the

defendant is now facing very serious civil charges, and he has a strong interest in a timely

resolution." *Sandifur*, 2006 WL 3692611 at *3 (rejecting government argument that "[s]taying

discovery is necessary to protect the integrity of the Government's investigation and ensure that

the Defendants will not use the civil discovery process to obtain discovery that is not authorized

in a criminal case").  As the court observed in *S.E.C. v. Coiffi*, 2008 WL 4693320 at *1-2

(E.D.N.Y. Oct. 23, 2008), "[c]ourts are justifiably skeptical of blanket claims of prejudice by the

government where—as here—the government is responsible for the simultaneous proceedings in

the first place." *See also S.E.C. v. Saad*, 229 F.R.D. 90, 91 (S.D.N.Y.2005) ("[I]t is strang[e] that

the U.S. Attorney's Office, having closely coordinated with the SEC in bringing simultaneous

civil and criminal actions against some hapless defendant, should then wish to be relieved of the

consequences that will flow if the two actions proceed simultaneously").

    ii.  *The government has not demonstrated any real risk of improper harassment.*

The Court should likewise reject the government assertion that the "only purpose of []

depos[ing] [anticipated government witnesses] would be to harass these witnesses and

manufacture artificial inconsistencies . . ." Govt. Memo at 13.  There is no basis to responsibly

assert that depositions in this case would be hostile or that any real harassment or intimidation is

an issue here—*i.e.*, physical harassment or unlawful or improper witness intimidation.

There is no assertion by the government, or evidence offered by the government, that

permitting this case to proceed will lead to perjury or manufactured evidence.  Mr. Kanodia not

only knows the identity of the government's cooperating witnesses but also spent years being

friends with Tippee 1 and being the spouse of Ms. Basu.  Certainly, given the present posture of

the criminal case, the existence of civil discovery does not create any additional risk of improper or unlawful intimidation, and to the extent that there is any perceived unfairness during the course of a deposition, the SEC and the witnesses' own counsel from the law firms of Goodwin Procter LLP and Locke Lord Edwards LLP can more than protect their witness/clients.

     iii.   *The Court should not countenance the government's true litigation strategy: file a civil enforcement action yet prevent the defendants from ever fully defending themselves in the civil litigation.*

The civil enforcement action, standing alone, is a gravely serious matter, and the defendants have a strong interest in defending this matter to the fullest extent possible, while seeking its expedient resolution. *See, e.g.*, *Fraser*, 2009 WL 1531854 at 3 ("The civil case, like the criminal case, asserts serious violations of the securities laws, and Defendants have a strong interest in being able to defend themselves against the SEC's allegations as quickly as possible."). Yet, as the government argues, "a conviction in the criminal case could have an estoppel effect as to the civil liability of both defendants." Govt. Memo at 5; *see also id.* at 10 ("[I]f the government prevails in the criminal case, Kanodia and Ahmed will likely be estopped from litigating the merits of the SEC's allegations."). While the government offers the estoppel effect as an "efficiency" argument, the litigation paradigm offered by the government actually creates an extreme, and unfair, prejudice to the defendants. In reality, while the government complains that the defendants will unfairly attempt to use the civil, it is the government that seeks to unfairly exploit the differences in discovery to its advantage. In short, the government, working hand-in-hand with the SEC, seeks to reap the benefits of bringing a civil enforcement action (including but not limited to the public relations benefits), yet never be forced to defend the merits of the civil action. The government is correct: the criminal discovery process is narrower and more limited than the civil discovery process. There is no opportunity to depose

10

government witnesses, there is no right to propound interrogatories, and there is no right to request documents. As such, a criminal defendant has far less ability to meaningfully defend himself and/or discover any legal or factual deficiencies to the government's case, before the actual trial, than a civil litigant.

Here, understanding these practical realities, the government filed a civil enforcement action and a criminal proceeding, and is attempting to force the defendant into the narrower criminal discovery process to thereafter reap the rewards of a conviction in the civil enforcement action via collateral estoppel, all the while insulating its allegations from the more probing civil discovery provisions, creating a profound unfairness. The government has chosen to bring the civil enforcement action—which involves serious accusations and corresponding public obloquy. It is profoundly unfair, not more "efficient," to prevent the defendants from fully defending the civil case—in a timely manner. *S.E.C. v. O'Neill*, 98 F. Supp. 3d at 223 ("This no doubt would create efficiencies for the SEC, which would then be able to bring and win a case without actually having to try it or even go through the discovery process. However, the Court will not in any way abridge [the defendant's] procedural rights simply to preserve SEC resources or allow the SEC to defer its case so as to more efficiently capitalize on a successful criminal prosecution.").

> iv.  *A stay would not serve the interests of the Plaintiff and Defendant proceeding expeditiously or save the Defendant's resources.*

The indefinite full or partial stay of the civil proceedings that the government requests would waste resources and further prejudice Mr. Kanodia. Govt. Memo at 2. "The role of the Court is to ensure that once a party brings a criminal or a civil case, the case is administered impartially and efficiently to ensure a fair outcome." *O'Neill*, 98 F. Supp. 3d at 223. If the government's requested stay is granted, the civil case will hang in limbo until Mr. Ahmed's

potential return, which could be years from now. Govt. Memo at 2.  During that time period, this case would hang over Mr. Kanodia, who would be unable to defend himself against the charges *even if he succeeds in the criminal case*.  At minimum, Mr. Kanodia would be forced to waste time, in which substantial progress could be achieved in this case, and waste resources essentially defending two successive rather than concurrent cases.  *O'Neill*, 98 F. Supp. 3d at 223. ("The idea of the federal government asking for the SEC's case to be stayed to save the defendants money is troubling—particularly where the government's request could have the ancillary effect of giving the government a strategic advantage in its own case.").  Finally, a stay clearly does not advance the SEC's interest in proceeding expeditiously.

> c. *A stay of any deposition directed at Mr. Kanodia is necessary to avoid Mr. Kanodia risking compromising his criminal defense or having to accept an adverse inference.*

Mr. Kanodia respectfully requests a stay of any deposition that would be directed at him in this proceeding at this time.  By filing parallel lawsuits against Mr. Kanodia, the government put Mr. Kanodia "between the proverbial rock and hard place."  *O'Neill*, 98 F. Supp. 3d at 223.

Mr. Kanodia seeks to move this case forward to avoid wasting resources and undue prejudice, but runs the risk of being deposed.  If Mr. Kanodia were to be deposed, he would run the "risk of compromising his criminal defense[], or having to accept an adverse inference if he chooses not to answer question in a civil deposition" on Fifth Amendment grounds.  *Id.*  This Court has found that a defendant is "entitled to defend both the civil and criminal cases without the defense of either prejudicing his rights in the other." *Id.*  Thus, Mr. Kanodia respectfully requests an order staying any deposition as to himself in this case at this time. *Id.*

III.  *Conclusion*

While the factual issues in the civil and criminal cases do overlap, that is just one of several relevant factors for this Court to consider.  The other factors do not support a stay: the public and the SEC have an interest in the expedient resolution of the civil proceeding, and the defendants will be substantially prejudiced by a stay of this matter, especially given the government's request for an indefinite stay pending resolution of the case against Mr. Ahmed, currently a fugitive. Govt. Memo at 2.  As for the Court's interest in managing its docket and resources, conducting discovery in this matter will have little to no impact on the Court's docket or resources – any role by the Court would be limited to resolving any disputes over the scope of discovery, and hopefully that would be minimal if non-existent.

For all the foregoing reasons, Mr. Kanodia respectfully submits that the government's motion for a general or limited stay to discovery should be denied and an order staying the deposition of Mr. Kanodia in this case should be granted.

## REQUEST FOR ORAL ARGUMENT

Defendant Amit Kanodia respectfully requests an oral argument, pursuant to Local Rule 7.1(d), on December 9, 2015 at 3:00 PM, the same date and time as the currently scheduled Fed. R. Civ. P. 16 conference, to avoid any unnecessary delay.

Respectfully Submitted,

Amit Kanodia
By his Attorney,

By:     **/s/ Martin G. Weinberg**
Martin G. Weinberg, P.C.
Mass. Bar No. 519480
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
owlmgw@att.net

*Attorney for Defendants Amit Kanodia and*
*Lincoln Charitable Foundation*

Dated: November 23, 2015

## CERTIFICATE OF SERVICE

I, Martin G. Weinberg, hereby certify that on this date, November 23, 2015, a copy of the foregoing documents has been served via Electronic Court Filing system on all registered participants, including Sarah E. Walters, Assistant United States Attorney.

**/s/ Martin G. Weinberg**
Martin G. Weinberg