UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 15-cv-13042-ADB |
| AMIT KANODIA and IFTIKAR AHMED, et al., | * * * | |
| Defendants. | * | |

## ORDER

December 17, 2015

BURROUGHS, D.J.

## I.    INTRODUCTION

The United States Department of Justice ("government") has moved to intervene in this action for the limited purpose of moving for a stay of discovery pending the conclusion of parallel criminal proceedings (Docket No. 52). For the reasons set forth below, the government's motion to intervene is ALLOWED. The government's motion to stay discovery is DENIED, except that (1) the depositions of Defendant Amit Kanodia ("Mr. Kanodia") and the individual identified in the Complaint as "Tippee 1" are stayed until further order of this Court, and (2) the government retains the right to object to particular discovery requests, which objections will be dealt with by the Court as they arise.

## II.    RELEVANT PROCEDURAL HISTORY

The United States Securities and Exchange Commission ("SEC") filed the instant action against Mr. Kanodia, co-defendant Iftikar Ahmed ("Mr. Ahmed"), and several relief defendants on April 2, 2015, alleging violations relating to insider trading activities (Docket No. 1). This is a

civil case. There is also a parallel criminal case pending against Mr. Kanodia and Mr. Ahmed arising out of the same alleged insider trading activity. See United States v. Kanodia and Ahmed, No. 15-cr-10131-NMG (D. Mass.). Specifically, on May 28, 2015, Mr. Kanodia and Mr. Ahmed were charged by a grand jury with conspiring to commit securities fraud in violation of 18 U.S.C. § 371, and securities fraud in violation of 15 U.S.C. §§ 78j(b), 78ff(a) and 17 C.F.R. § 240.10b-5. See 15-cr-10131-NMG (Docket No. 27, Indictment). Mr. Kanodia entered a plea of not guilty on June 23, 2015. See id. (Docket No. 34). Although the criminal case against Mr. Kanodia is proceeding, Mr. Ahmed is currently a fugitive.

On November 16, 2015, the government filed the instant Motion for Leave to Intervene and for a Stay of Further Discovery Pending Resolution of Parallel Criminal Proceedings. (Docket No. 52). The SEC assents to the government's request to intervene and does not object to the motion for a stay of discovery. (Id., p. 1). Although Mr. Kanodia does not oppose the government's intervention, he does oppose the government's motion to stay. (Docket No. 53). The Court heard oral argument on December 9, 2015.

### III.    GOVERNMENT'S MOTION FOR LEAVE TO INTERVENE

Pursuant to Rule 24 of the Federal Rules of Civil Procedure, the government seeks to intervene in this action for the limited purpose of moving for a stay of discovery pending resolution of the parallel criminal case against Mr. Kanodia. The Court has discretion to grant permissive intervention pursuant to Rule 24(b) where the prospective intervenor "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Here, where the same facts underlie both the civil and criminal actions, the government arguably has an interest sufficient to warrant intervention in this case. Thus, the government's motion to intervene is granted pursuant to Rule 24(b)(1)(B).

IV.     **GOVERNMENT'S MOTION FOR A STAY OF DISCOVERY PENDING RESOLUTION OF PARALLEL CRIMINAL PROCEEDINGS**

The government makes three general arguments in support of its motion to stay discovery. First, the government argues that "without a stay, Kanodia (and Ahmed if he returns), could use the civil discovery process in a manner that impairs the proper administration of the criminal case." (Docket No. 52, p. 2). The government next argues that "a stay of discovery would create genuine efficiencies." (Id., p. 5). Lastly, the government asserts that "a stay will not prejudice the defendants and will conserve the parties' and the Court's resources." (Id.).

The Court finds none of these arguments persuasive. Although there may be situations were a stay is warranted for all or some of the reasons articulated by the government, this is not one of those instances. Most significantly, the grand jury investigation appears to be over, and there is, therefore, no reason for a stay to protect the integrity of an ongoing investigation. Since an indictment has been returned against both defendants, the government is already obligated to produce Brady and other materials covered by the automatic discovery rules and will shortly have to produce more generalized discovery as well. At this point in the proceedings, the Court will not intervene to generally delay the disclosure of relevant information.

To address each of the government's three arguments more specifically:

First, the government argues that without a stay, Mr. Kanodia (and perhaps eventually Mr. Ahmed) could use the civil discovery process to obtain information that could help him in his criminal case and to which he otherwise would not be entitled at this stage of the criminal proceeding. In support of its motion, the government cites no immediate concerns, but simply speculates that Mr. Kanodia "could use the civil discovery process in a manner that impairs proper administration of the criminal case." (Docket No. 52, p. 2) (emphasis added). As a potential example, the government references the possibility of a one-sided witness interrogation

3

without the government present, which would provide an opportunity for a defendant to "manufacture artificial inconsistencies" in a setting where the government has no opportunity to object, refresh the witnesses' recollection, or rehabilitate them. (Id., pp. 2-3). This theoretical possibility, however, does not "undermine the Jencks Act and other criminal rules" or otherwise "impair[] proper administration of the criminal case," as the government claims. It is simply the reality of litigation in cases where there are parallel civil and criminal proceedings. See, e.g., S.E.C. v. Cioffi, No. 08-cv-2457 (FB)(VVP), 2008 WL 4693320, *1 (E.D.N.Y. Oct. 23, 2008) ("Courts are justifiably skeptical of blanket claims of prejudice by the government where – as here – the government is responsible for the simultaneous proceedings in the first place."). The government is not entitled to insulate its witnesses from discovery or questioning in anticipation of a criminal trial. Further, although it is unclear how an "artificial inconsistency" differs from any other inconsistency, fact finders are entitled to explore such failures of memory or inconsistencies, however they may arise. In fact, subjecting these aspects of testimony to meaningful probing can be the best way to assess credibility.

At root, the government is essentially saying that allowing civil discovery to go forward could give a criminal defendant information earlier than the government would otherwise be required to disclose it, or access to witnesses prior to the criminal trial, and that this premature disclosure could adversely impact the criminal prosecution. As other courts have recognized, however,

> to the extent that the defendants' discovery requests simply result in the happenstance that in defending themselves against the serious civil charges that another government agency has chosen to file against them they obtain certain ordinary discovery that will also be helpful in the defense of their criminal case, there is no cognizable harm to the government in providing such discovery beyond its desire to maintain a tactical advantage.

4

S.E.C. v. Oakford Corp., 181 F.R.D. 269, 272-73 (S.D.N.Y. 1998); see also S.E.C. v. Saad, 229 F.R.D. 90, 91 (S.D.N.Y. 2005) ("It is strange[] . . . that the U.S. Attorney's Office, having closely coordinated with the SEC in bringing simultaneous civil and criminal actions against some hapless defendant, should then wish to be relieved of the consequences that will flow if the two actions proceed simultaneously.").

The Court would be more inclined to issue a stay if the pendency of the civil case threatened to compromise the integrity of an ongoing government investigation, or if having to defend both matters simultaneously compromised a defendant's ability to defend himself in either proceeding. In the instant case, however, the government's investigation appears to be complete, and charges have been brought. Mr. Kanodia is not claiming any hardship, and in fact, to the contrary, he opposes the stay.[1] Although it is true that civil discovery might reveal aspects of the government's criminal case, or potentially result in inconsistent witness statements if witnesses are questioned more than once, exposing the government's case or testing witness recollections will not fundamentally compromise an ongoing investigation or prosecution. Moreover, these are the risks that the government and the SEC run when they elect to pursue parallel investigations and prosecutions. In any event, the government has not made a sufficient showing to warrant a stay in this instance, particularly over the objection of Mr. Kanodia.

The two cases primarily relied upon by the government in support of its first argument are largely inapposite. For example, the government cites Campbell v. Eastland, 307 F.2d 478, 487 (5th Cir. 1962) for the proposition that a "litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on

---

[1] If Mr. Ahmed was to make such a claim, the court would be unsympathetic, since he has chosen to remain a fugitive from the criminal case and is thus not defending himself at all in that matter.

5

criminal discovery." (Docket No. 52 p. 3).  In <u>Campbell</u>, however, as distinct from the instant case, it was the <u>defendant</u> who brought the civil action, perhaps in an effort to secure broader discovery than would have been available in his criminal prosecution. <u>See</u> 307 F.2d at 481. In this case, the SEC chose to commence a civil enforcement proceeding. The government cannot elect to bring parallel civil and criminal proceedings and then complain about the effects. <u>See, e.g.</u>, <u>S.E.C. v. Sandifur</u>, No. C05-1631 C, 2006 WL 3692611, *2 (W.D. Wash. Dec. 11, 2006) (noting that "[a]lthough courts have been receptive to Government stay requests in civil cases brought by parties other than the Government….[c]ourts regularly deny stays when civil regulators have worked directly in concert with the criminal prosecutors during the investigation").

<span>      </span><u>S.E.C. v. Nicholas</u>, 569 F. Supp. 2d 1065 (C.D. Cal. 2008), is similarly distinguishable. In <u>Nicholas</u>, which involved two distinct criminal cases and a civil case, "the volume of discovery in the civil case [was] massive," as the case involved "eighty-eight options grants" and "twelve claims of securities fraud," the volume of documents to be produced in discovery was expected to "range well into the millions of pages," and the total number of witnesses was estimated to be between 75 and 100. <u>See</u> 569 F. Supp. 2d at 1069.  The court further noted that "[a]t the time these charges were filed, Broadcom's $2.2 billion charge against earnings was the largest restatement . . . arising from stock option backdating in our country's history." <u>Id</u>. at 1072 (internal quotations omitted). In granting the stay requested by the government, the court held that, in this instance, "[a]llowing for competing civil and criminal cases to proceed simultaneously would undermine the public's right to a fair and efficient prosecution of its criminal laws, distract the Defendants and the USAO from fully preparing their respective cases, and divert the Court's attention with burdensome discovery litigation and duplicative law and

motion." Id. at 1067. Thus, Nicholas was a case of a much different magnitude, and even there, the court's ruling was more focused on the difficulty of managing the litigation than on the scope of discovery that would be available to the parties if the civil and criminal cases were to proceed simultaneously. In this case, in contrast, both the civil and criminal cases involve a much more discrete factual scenario, and no one has alleged the type of case-management issues of concern to the court in Nicholas.

Second, the government asserts that a stay of discovery in the civil case would create "efficiencies," citing, as an example, that "a conviction in the criminal case could have an estoppel effect as to the civil liability of both defendants." (Docket 52, at p. 5). In other words, a conviction in the criminal case would estop a defendant from contesting the civil enforcement action. This undoubtedly would create efficiencies for the SEC, which would then be able to bring and win a case without actually having to try it or even go through the discovery process. However, the Court will not in any way abridge Mr. Kanodia's procedural rights simply to preserve SEC resources, nor will the Court permit the SEC to defer its case so as to capitalize more efficiently on a successful criminal prosecution.

Third, the government maintains that staying the civil case will not prejudice the defendants and will conserve resources. The government and the SEC made their decisions regarding resource allocation when they chose to bring both of these cases in the same time frame. Mr. Kanodia is not asking to have his resources conserved, and he is asserting prejudice. The Court is committed to administering this case efficiently, but also to ensuring a fair outcome. Although the Court appreciates the government's concern for resources and its willingness to assess prejudice on behalf of a defendant, both assessments are undermined by the somewhat self-serving nature of the government's conclusions.

All of this being said, the Court remains concerned about preserving Mr. Kanodia's rights. He is entitled to defend both the civil and criminal cases without the defense of either prejudicing his rights in the other. Therefore, the Court orders that Mr. Kanodia's deposition is stayed pending further order of the Court. He will thereby avoid facing the dilemma of either choosing to make statements that could be used against him in his criminal case, or suffering an adverse inference if he refuses to answer questions at a deposition. Similarly, and as more fully discussed at oral argument, the individual identified as Tippee 1 in the SEC's Complaint may also not be deposed until further order of the Court. The deferral of these depositions is based on the potential deponents' still existing Fifth Amendment rights and the Court's dual concerns about staying the case and compromising any party's right against self-incrimination.[2] The parties may notify the Court when all discovery is complete, but for these depositions. If, at that time, their depositions are still requested, a status conference will be held to determine scheduling.

As a final note, the government cites a number of cases in which courts have been willing to grant the type of stay it requests here. This Court will always evaluate such requests with an

---

[2] Following oral argument on this motion, counsel for Mr. Kanodia filed a supplemental submission on December 11, 2015 (Docket No. 61) in which he asserts that Tippee 1 has effectively waived his Fifth Amendment rights by virtue of his agreements and interviews with the U.S. Attorney's Office and the SEC, and by pleading guilty to an Information. The government filed its response on December 16, 2015 (Docket No. 62, Exhibit 1). It is well-established that the entry of a guilty plea does not extinguish a defendant's Fifth Amendment rights. Mitchell v. United States, 526 U.S. 314, 326 (1999) ("[T]he acceptance of a guilty plea does not eliminate the possibility of further incrimination."). Further, based on the record before it, the Court cannot conclude that any of the other events cited by Mr. Kanodia constituted a waiver of Tippee 1's Fifth Amendment rights or involved a grant of immunity. Because it currently appears to the Court, based on the record before it, that Tippee 1 continues to have a valid Fifth Amendment privilege, this Court will continue to require that Tippee 1's deposition, like Mr. Kanodia's, be deferred until all other discovery in this case is complete or until further order of the Court. Mr. Kanodia may file a motion to lift the stay of Tippee 1's deposition if he learns that Tippee 1's situation has changed.

eye toward the facts and circumstances of individual cases and defendants. But in this case, the government is largely concerned about having to reveal discovery or expose its witnesses to questioning earlier than it might otherwise have to do. This is a strategic and tactical consideration that has little to do with the public interest or the interests of the defendants. If the U.S. Attorney's Office and the SEC choose to bring parallel civil and criminal cases close in time to each other, then each entity must be prepared to go forward with its case on a usual schedule. The SEC and the U.S. Attorney's Office cannot pursue a strategy that allows them to take advantage of the benefits of dual prosecutions, but then complain when the defendants, too, find ways to benefit from the otherwise very burdensome task of having to defend on two fronts at the same time.

## V.   CONCLUSION

For the foregoing reasons, the government's Motion for Leave to Intervene and for a Stay of Discovery (Docket No. 52) is ALLOWED IN PART AND DENIED IN PART. Specifically, the government's request to intervene is ALLOWED. The government's request for a stay of discovery pending the resolution of the parallel criminal proceedings is DENIED, with the exception of the depositions of Mr. Kanodia and Tippee 1, which are stayed until further order of this Court. Also, the government may object to particular discovery requests, which the Court will address on a case-by-case basis.

**SO ORDERED.**

Dated: December 17, 2015                                        /s/ Allison D. Burroughs
                                                                ALLISON D. BURROUGHS
                                                                U.S. DISTRICT JUDGE